UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DR. STEPHEN RUSHING

VERSUS

THE BOARD OF SUPERVISORS OF THE
UNIVERSITY OF LOUISIANA SYSTEM
(SOUTHEASTERN   LOUISIANA
UNIVERSITY), ET AL

CIVIL ACTION

NUMBER 06-623-RET-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within ten days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, July 29, 2008.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DR. STEPHEN RUSHING

VERSUS

THE BOARD OF SUPERVISORS OF
THE UNIVERSITY OF LOUISIANA
SYSTEM (SOUTHEASTERN LOUISIANA
UNIVERSITY), ET AL

CIVIL ACTION

NUMBER 06-623-RET-SCR


### MAGISTRATE JUDGE'S REPORT

Before the court is a Motion to Dismiss filed by defendants The Board of Supervisors of the University of Louisiana System, Dr. John Crain, Dr. David Evenson, Dr. Hunter Alessi and Dr. Tammy Bourg. Record document number 26. The motion is opposed.[1]


### Background

This complaint is based on alleged adverse actions taken against the plaintiff during his tenured employment with Southeastern Louisiana University (hereafter, the University) as a professor in the Music Department. Plaintiff originally sued the Board of Supervisors of the University of Louisiana System (hereafter, the Board) and University Provost and Vice President for Academic Affairs Dr. John Crain.[2]

---

[1] Record document number 39. Defendants filed a reply brief. Record document number 48. Plaintiff filed a sur-reply. Record document number 52.

[2] Record document number 1, Complaint With Jury Demand, ¶ 1.

Plaintiff amended and supplemented his complaint to explain that the Board members were sued in their official capacity for prospective equitable or injunctive relief, and Dr. Crain was sued in both his official and individual capacities.[3]  Plaintiff also added as defendants, in both their official and individual capacities, Dr. David Everson, Dr. Hunter Alessi and Dr. Tammy Bourg.[4]  Plaintiff sought prospective equitable or injunctive relief against the individual defendants in their official capacity, and damages from the individual defendants in their individual capacity.[5]

Plaintiff amended his complaint again, this time deleting the Board as an entity but adding as defendants the following individual board members in their official capacity only: Jimmy Long, Sr., Elsie Burkhalter, Michael Woods, Paul Aucoin, Victor Bussie, Renee Laeyrolerie, Andrew Coudrain, Wayne Parker, Winfred Sibille, Eunice Smith, Olinda Ricard, Connie Rougeou, Andrew Coudrain, Dr. Mildred Gallot, Robert Hale, and Jeff Jenkins.[6]

---

[3] Record document number 10, First Supplemental and Amended Complaint.

[4] *Id.*  Dr. Everson is the Chair of the Department of Music, *id.* ¶ VII; Dr. Alessi is the University Ombudsperson, *id.* ¶ XVI; Dr. Bourg is the Dean over the School of Arts and Humanities, *id.* ¶ XXI.

[5] *Id.* pp. 7-8.  Hereafter, these named defendants will be collectively referred to as "the individual defendants."

[6] Record document number 43, Second Amended Complaint.
(continued...)

2

Plaintiff asserted claims under 42 U.S.C. § 1983 and alleged that he was denied due process in violation of the Fourteenth Amendment and was retaliated against in violation of the First Amendment.  Plaintiff also asserted that the defendants breached and/or interfered with his contractual rights concerning access to the University's grievance procedure and certain leave benefits of his tenured employment.

Specifically, the plaintiff alleged that his pending grievances had not been, and would not be, processed in accordance with University policies and that he was prohibited from filing any new grievances.  Plaintiff also alleged that new policies were promulgated and enforced against him which denied him a minimum of three weeks of leave per semester for creative activities. Plaintiff asserted that these actions were committed in retaliation for his filing grievances, a lawsuit in state court, and this action.

## **Defendants' Motion**

Defendants moved to dismiss the plaintiff's claims. Defendants initially argued that the plaintiff's due process, retaliation, and contractual claims are barred by res judicata, specifically the doctrine of issue preclusion.  Defendants also

---

[6](...continued)
Hereafter, these named defendants will be collectively referred to as "the Board member defendants."

argued that the claims against the Board member defendants in their official capacity are barred by the Eleventh Amendment. Defendants asserted that the claims against the individual defendants in their individual capacity are precluded by qualified immunity.

Defendants submitted with their motion copies of the plaintiff's state court Petition, Supplemental and Amended Petition, the defendants' Answer to the Petition, the state trial court's Judgment, and the decision of the Louisiana First Circuit Court of Appeal (including the opinion dissenting in part). Normally, a Rule 12(b)(6) motion is decided based on the pleadings only. However, the plaintiff referred to the state court case several times in his complaint, and alleged that subsequent acts of the defendants taken after it was concluded were in retaliation for having filed it. These exhibits are central to the defendants' res judicata defense, their authenticity is unchallenged, and the plaintiff has not objected to the court considering these exhibits in connection with the defendants' res judicata defense. Therefore they have been considered.[7]

Defendants addressed the substantive deficiencies in the plaintiff's claims. With respect to the plaintiff's retaliation claim under the First Amendment, the defendants argued that the

---

[7] In determining a Rule 12 (b)(6) motion, a court may refer to matters of public record in addition to the allegations contained in the petition. *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006), *citing*, *Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995).

plaintiff has not alleged that he engaged in protected conduct of public concern.   Defendants asserted that the plaintiff's Fourteenth Amendment claims are insufficient because he has not alleged the deprivation of a recognized property interest that warrants Constitutional due process protections.   Finally the defendants argued that the state law claims should be dismissed because the plaintiff failed to (1) allege any extreme and outrageous conduct to support an intentional infliction of emotional distress claim and contractual interference claim, and (2) show that a contractual interference claim is ripe or that he had a contractual right to the University's internal grievance procedure.

**<u>Applicable Law</u>**

**Rule 12(b)(6)**

Defendant moved to dismiss the complaint for failure to state a claim upon which relief can be granted.   It is well settled that when evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the court accepts as true the well-pleaded factual allegations in the complaint, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor.   To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, ___ U.S.___, ___, 127 S.Ct. 1955, 1974 (2007); *In re Katrina Canal*

5

*Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied*, ____ U.S. ____, 128 S.Ct. 1231 (2008).  A complaint "does not need detailed factual allegations," but must provide the plaintiff's grounds for entitlement to relief - including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007), citing, *Bell Atl. Corp. v. Twombly*, ___ U.S.___, ___, 127 S.Ct. 1955, 1964-65 (2007).

**Res Judicata**

When a federal court is asked to give res judicata effect to a prior state court judgment, the res judicata law of the state in which the original judgment was rendered is applied.  *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 436 (5th Cir. 2000). *See also*,  *Hyatt v. American Citadel Guard Inc.*, 2007 WL 1169370, 3 (W.D. La. Apr. 19, 2007), *citing*, *Hernandez v. City of Lafayette*, 699 F.2d 734 (5th Cir. 1983).  In Louisiana, both claim preclusion and issue preclusion are included under the term "res judicata". *Minvielle, LLC v. Atlantic Refining Co.*, 2007 WL 2668715, 3 (W.D. La. Sept. 6, 2007), *citing*, *Burguieres v. Pollingue*, 2002-1385 (La. 2003); 843 So.2d 1049, 1053.  These principles of res judicata are codified in LSA-R.S. § 13:4231 which provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Subsection (3) of this statute adopts the principle of issue preclusion.  Issue preclusion requires the presence of (a) a final judgment; (b) identity of the parties; (c) actual litigation of an issue; (d) judicial determination of that issue; and (e) that the judicial determination of the issue must have been essential to the disposition of the claim in the prior action.  *In re Dyson*, 277 B.R. 84, 88 (Bkrtcy. M.D. La. Apr. 29, 2002), *citing, Goodman v. Spillers*, 28,933 (La.App. 2 Cir. 12/23/96); 686 So.2d 160.

**Eleventh Amendment Immunity**

Defendants moved on the basis of Eleventh Amendment immunity to dismiss the plaintiff's claims against them in their official capacity.  The Board of Supervisors for the University of Louisiana System, as the governing body for Southeastern Louisiana University, is an agency of the State of Louisiana and has Eleventh

7

Amendment immunity from suit against it in federal court.  *See*, *Rodriguez v. Board of Trustees for State Colleges and Universities,* 1993 WL 484909 (E.D. La. Nov. 2, 1993) (Southeastern Louisiana University, as an institution under the supervision of Board of Trustees for State Colleges and Universities, is arm of the state protected from suit in federal court by Eleventh Amendment); *see also*, *Laxey  v. Louisiana Bd. of Trustees*, 22 F.3d 612 (5th Cir. 1994)(University of Southwestern Louisiana is an institution under the supervision of Board of Trustees for State Colleges and Universities and considered an arm of the state protected from suit in federal court by Eleventh Amendment).[8]

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al*, 502 U.S. 21, 112 S.Ct. 358 (1991).  A suit against a state official in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing*, *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985).  Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, *supra*, at 166, 105 S.Ct. at 3105.

---

[8] As the defendants noted, the Board of Trustees for State Colleges and Universities referred to in LSA-R.S. 17:3217 is now known as the Board of Supervisors for the University of Louisiana System.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law.  A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a § 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device."  Officers sued in their personal capacity come to court as individuals.  However, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting*, *Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14 (1985).

With respect to official-capacity suits, the Supreme Court carved out an exception to Eleventh Amendment immunity in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which held that a plaintiff is not a barred from bringing a suit for prospective relief against a state employee acting in his official capacity.  *Nelson v. University of Texas at Dallas,* 2008 WL 2689116, 3 (5th Cir. 7/10/08), citing, *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008).  Under *Ex Parte Young*

9

a federal court can order injunctive relief which requires the stated official sued in his official capacity to conform his future conduct to the commands of federal law; *Ex Parte Young* does not permit a federal court to grant prospective injunctive relief requiring the state official to conform his future conduct to state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104-5, 104 S.Ct. 900, 910-11 (1984).

Thus, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacity for actions taken by them under color of state law which caused the deprivation of Constitutional rights.  Insofar as the plaintiff sought prospective injunctive relief against the defendants in their official capacity, his official-capacity claim is also actionable under § 1983. *Nelson*, *supra*, *citing*, *Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir.1988).

**Section 1983 Claims**

To state a claim under § 1983 a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).  A plaintiff must also identify defendants who were personally involved or whose acts are causally connected to the alleged Constitutional violation. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005),

10

*citing*, *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

Plaintiff alleged two causes of action under § 1983. First, the plaintiff alleged that the defendants violated his right to due process under the Fourteenth Amendment by failing to allow him access to the University grievance procedure as it is described in the University handbook.

In determining what constitutes a protected property right, the Supreme court has explained:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it ....
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972). If it is determined that the plaintiff has a protected property interest warranting procedural due process, he is entitled notice and the opportunity to be heard at a meaningful time and in a meaningful manner. *Holden v. Knight*, 2005 WL 3067824, (5th Cir. 2005).

Plaintiff's second claim under § 1983 involves the defendants' alleged retaliation against the plaintiff for demanding access to the University grievance process and subsequently exercising his right to sue.

11

A public employee may have a § 1983 retaliation claim under the First Amendment against his employer if: (1) the employee establishes that he suffered an adverse employment action; (2) the employee's speech involved a matter of public concern; (3) the employee's interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) the employee's protected speech motivated the employer's adverse employment action. *Salge v. Edna Independent School Dist.*, 411 F.3d 178, 184 (5th Cir. 2005); *Wallace v. County of Comal*, 400 F.3d 284, 290 (5th Cir. 2005); *See also, Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006).

The relevant test on the second element – whether the plaintiff's speech involves a matter of public concern – is derived from *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole court record." *Id.* at 147-48. The shorthand test is whether the employee's speech falls outside the parameters of speech involving matters of public concern – "when a public employee speaks not as a citizen, but instead as an employee upon matters only of personal interest." *Kennedy v. Tangipahoa Parish Library Board of Control*, 224 F.3d 359, 366 (5th Cir. 2000).

An employee's speech may contain a mixture of public and

12

personal concerns.  *Connick* does not exclude the possibility that an issue of private concern to the employee may also be an issue of public concern.  The fact that the communication is of a private nature or made in a private forum is not dispositive.  Nor does the fact that an employee chooses to complain internally rather than publicize his complaints preclude a finding that his speech relates to a matter of public concern.  *Id.*, at 367-71.

With respect to an employee's First Amendment protection from retaliation for filing a lawsuit, the Fifth Circuit has concluded that the law is generally the same as that pertaining to an employee's speech, particularly that an employee is only entitled to relief if the subject of that suit is of concern to the public.  *Rathjen v. Litchfield*, 878 F.2d 836, 842 (5th Cir. 1989).  The question in these cases is whether the employee's opposition to the adverse employment action or the employee's filing of a lawsuit are "matters of public concern" or are "matters only of personal interest."  *Id*.

**Qualified Immunity**

A state official sued in his individual capacity has qualified immunity from suit and liability unless the plaintiff shows the official violated the plaintiff's clearly established Constitutional rights.  The principles of qualified immunity are summarized as follows:

The doctrine of qualified immunity shields government

13

officials acting within their discretionary authority
from liability when their conduct does not violate
clearly established statutory or constitutional law of
which a reasonable person would have known. *Harlow v.
Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d
396 (1982). The qualified immunity analysis is a two-
step inquiry. First, a court must decide whether the
plaintiffs' allegations, if true, establish a violation
of a clearly established right. *Hare v. City of Corinth*,
135 F.3d 320, 325 (5th Cir.1998)(en banc). Second, if
the plaintiffs have alleged a violation, the court must
decide whether the conduct was objectively reasonable in
light of clearly established law at the time of the
incident. *Id.* Even if the government official's conduct
violates a clearly established right, the official is
nonetheless entitled to qualified immunity if his conduct
was objectively reasonable. *Id.*

*Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).

## Analysis

### Res Judicata

Defendants argued that the plaintiff's Fourteenth Amendment

due process claim, First Amendment retaliation claim, and contract-

based claims are barred by res judicata, specifically issue

preclusion. Defendants argued that these issues were previously

litigated and decided in the plaintiff's state court lawsuit,

*Rushing v. Bd. of Supervisors of Univ. of LA System*.[9]

A comparison of the allegations contained in the plaintiff's

original and amended federal complaints to his claims in the prior

--------

[9] Docket No. 464,510, 19th Judicial District Court, East Baton
Rouge Parish. See also record document number 26, Memorandum in
Support of Motion to Dismiss, exhibit E, judgment issued on appeal
in *Rushing v. The Board of Supervisors of the University of
Louisiana System*, 2003-871 (La.App. 1 Cir. 5/14/04).

state court lawsuit shows that under LSA-R.S. 13:4231(3), the plaintiff is barred from re-litigating a Fourteenth Amendment due process claim based on a protected property interest in the University's grievance procedure.

In both his federal and state actions, the plaintiff alleged that he was denied due process under the Fourteenth Amendment because his grievances were not properly handled and/or processed in accordance with the University's published policies.[10]   In affirming the state district court's judgment, the state appellate court resolved the plaintiff's due process claim in three sentences:

> The due process clause does not vest a tenured faculty member with a property interest in every facet of his employment.  See **Johnson v. Southern University & A & M College**, 00-2615, [(La. App. 1 Cir. 12/28/010] at p.7, 803 So.2d [1140] at 1145.  We find that an internal grievance procedure, contained in a faculty handbook, does not, as a matter of law, constitute a constitutionally protected property right.  Therefore, we conclude the trial court properly dismissed Dr. Rushing's due process claim based on the alleged failure of the university to follow its internal grievance procedures.

*Rushing*, *supra*, p. 8.[11]

---

[10] Record document number 1, Complaint with Jury Demand, ¶¶ 5-19, and 23. See also, record document number 26, exhibit A, Petition, ¶¶ 3-11. Record document number 26, Memorandum in Support of Motion to Dismiss, exhibits A, plaintiff's original Petition, and exhibit B, the plaintiff's Supplemental and Amended Petition.

[11] The *Johnson* cited by the appellate court did not involve USL, the Board or access to, or use of, a university grievance procedure.  Rather, it involved the university's right to assign a teacher to certain classes.  *Johnson*, *supra* at p. 7, 803 So.2d at
(continued...)

Accordingly, the court found that the plaintiff's due process rights were not violated by the University's failure to follow its internal grievance procedure.  This finding demonstrates that the issue of whether the plaintiff has a constitutionally protected property interest in the University grievance procedure was actually litigated, judicially determined, and was essential to the disposition of the plaintiff's due process claim in the state court case.

Plaintiff argued that res judicata is not applicable in this situation because the defendants failed to establish a commonality of parties.  In the state court action, the plaintiff named as the defendant The Board of Supervisors of the University of Louisiana System, Southern Louisiana University.  Plaintiff asserted that, unlike the prior state court suit, his federal complaint named as defendants individual university personnel who acted separate and apart from the Board of Supervisors and do not appear in the same quality or capacity as the state action defendant.

It is well-established in Louisiana law that the res judicata element requiring identity of parties is satisfied when one party's interests are adequately represented by another party to an earlier action such that he may be considered a virtual representative

---

[11](...continued)
1145 ("Absent a contractual provision limiting Southern University's right to reassign Johnson's classes, Johnson has no property interest in his particular class assignments.").

because their interests are closely aligned.[12]   In the plaintiff's federal action, the defendants consist of the individual Board members (the Board member defendants) and University administrative personnel (the individual defendants).   For the Fourteenth Amendment issue, clearly their interests are so closely aligned with those of the Board that they were virtually represented for purposes of this res judicata analysis.

Plaintiff also argued that the state court judgment does not bar this court from adjudicating a Fourteenth Amendment claim based on grievances that were filed after the conclusion of the state court action.  Plaintiff asserted that res judicata cannot apply to any claims that did not exist before the state court action concluded.

Plaintiff's argument is unpersuasive because he fails to acknowledge the distinction between the elements of issue preclusion and claim preclusion.   Defendants are seeking a dismissal of the plaintiff's Fourteenth Amendment claim on the basis of issue preclusion, which does not require the claim to exist at the time the prior judgment was rendered.  Because the defendants have shown that each element of issue preclusion is satisfied with respect to the state court's determination that the University's grievance procedure does not constitute a

---

[12] *Forum for Equality, PAC v. McKeithen*, 2004-2551 (La. 1/19/05) 893 So.2d 738, 745.

Constitutionally protect property interest, the plaintiff's due process claim in his federal action based on the University's grievance procedure is barred by res judicata.[13]

While the defendants have shown that issue preclusion bars the re-litigation of the plaintiff's due process claim based on the University grievance procedure, they have not established that res judicata is applicable to the plaintiff's First Amendment retaliation claim. The record shows the plaintiff's First Amendment claims were dismissed by the state court based on the substance of each specific grievance and the determination that none constituted a matter of public concern.[14]   Because the state court's dismissal of the plaintiff's First Amendment retaliation claim was based specifically on the nature of the plaintiff's grievances as alleged in his state court petition, the prior judgement cannot preclude First Amendment retaliation claims based on grievances not address by the state court.   In his federal complaint, the plaintiff alleged that he had approximately 30 pending grievances, approximately half which originated after the state appellate court rendered its opinion.[15]   The complaint does

---

[13] The only due process claim that is barred by res judicata is one based on a property interest in the University's grievance procedure.  There is no need to address whether a due process claim based on any other alleged property interest is still viable.

[14] *Rushing*, *supra*, p. 9.

[15] Record document number 43, Second Amended Complaint, ¶ 3.

18

not detail the nature of all these grievances, but it does allege that the grievances were associated with several important and serious issues of public concern.[16]   Nothing in the plaintiff's federal complaint conclusively establishes that any of the grievances are the same as those raised in the state court action.[17] Thus, the plaintiff's First Amendment retaliation claim is not barred by res judicata since the record fails to demonstrate that the issues raised in his grievances addressed and judicially determined by the state court present the same issues as those grievances referenced in his federal complaint.

Defendants' res judicata defense against the plaintiff's contractual claims is also without merit.   In support of this

---

[16] *Id*. Plaintiff specifically listed the issues of public concern as follows: 1) falsification of documents by faculty and staff; 2) negligence, incompetence and malfeasance in office by the administration at public meetings; 3) the University's policies governing the distribution of monies through research and grants which are discriminatory against faculty in the arts; 4) the violence in the workplace plan has been misused and ignored creating the potential for an unsafe environment for students, faculty, and staff; 5) "new appointment" letters create illegal, unethical, and unprofessional situations of concern for faculty members; 6) ethical standards, as cited in the Faculty Handbook, have been violated by the administration; 7) the misinterpretation and non-application of policies prevent faculty members from having meaningful access to the grievance procedure; and 8) the right to petition for the redress of grievances through grievances and/or lawsuits without the fear of adverse employment actions.

[17] Some details of the grievances at issue in the state court case are contained in the *Rushing, supra,* decision at pp. 2-6.  It appears from the appellate court's decision that there were nine grievances at issue before the state court. It is not obvious that these nine grievances are among those referenced in the plaintiff's complaint.

argument, the defendants asserted that in both the state and federal actions, the plaintiff raised the issue of whether the plaintiff's employment contract protects his right to use the grievance procedure.[18]   Defendants argued that the state court determined the plaintiff had no legal right to demand that the University follow the published grievance procedure.

Defendants have misinterpreted the state court's findings. The state court specifically found that the plaintiff did not have a Constitutionally protected property interest in the grievance procedure.   The court's majority opinion court simply did not address whether any contractual right to use the grievance procedure was created under state law by the employment contract between the plaintiff and the University.[19]

---

[18] Defendants' argument is based on one sentence from the plaintiff's Supplemental and Amended Petition filed in state court: "On November 2, 1999 the Defendant purportedly 'suspended' the Plaintiff's contractual rights to the university's grievance process."  This was 1 of 12 alleged acts of retaliation made in support of the plaintiff's claim that the Board committed unlawful employment practices in violation 42 U.S.C. § 2000e-2(a)(1) after he filed grievance #7.  It is not mentioned in the state district court's judgment or the appellate court's decision.  There is no indication that the state district court or the court of appeal construed this one sentence as a free-standing breach of contract claim.

[19] This conclusion is buttressed by the following statement in the dissenting judge's opinion: "I agree with the majority that **even if he had a contractual right to utilize the grievance procedure,** such a right is simply not a property right under our law."  This statement indicates that the dissenting judge did not believe the majority had determined whether the plaintiff did or did not have a contractual right to use the grievance procedure.

**Eleventh Amendment Immunity**

In his complaint, the plaintiff sought equitable and injunctive relief against both the Board member defendants, and the individual defendants in their official capacity, in the form of (1) an order requiring them to process his grievances according to the grievance procedure established by the Board of Supervisors, and (2) an order enjoining and prohibiting them from interfering with the plaintiff's grievance rights.[20]  Because the plaintiff is seeking prospective injunctive relief against these defendants, his claims against them in their official capacity are not barred by Eleventh Amendment immunity.[21]

To support their argument that the plaintiff's allegations are insufficient to invoke the *Ex Parte Young* exception, the defendants relied on *Okpalobi v. Foster*[22] and argued that to overcome Eleventh Amendment immunity the plaintiff is required to allege that the official being sued in his official capacity has some connection with the enforcement of the unconstitutional act.  Defendants asserted that the plaintiff failed to demonstrate that the

---

[20] Record document 43, Second Amended Complaint, Prayer for Relief.  Because the plaintiff's Fourteenth Amendment due process claim based on the grievance procedure is barred by res judicata, the relief sought by the plaintiff must be appropriate relief for a First Amendment retaliation claim.

[21] *Ex Parte Young*, 209 U.S. 123.

[22] 244 F.3d 405 (5th Cir. 2001).

21

individual defendants in their official capacity are charged with enforcing any of the actions or rules that allegedly violate his constitutional rights.[23]

Plaintiff argued that *Okpalobi* is factually and legally unrelated to the issues in this case, and therefore inapplicable, since *Okpalobi* dealt with enjoining the enforcement of an allegedly unconstitutional state statute.  Plaintiff maintained that he does not seek to prevent the enforcement of an unconstitutional state statute, but rather to enjoin the defendants from continuing to act under color of state law to deprive him of his Constitutional rights.[24]   Indeed, what the plaintiff complains about is the defendants' failure to process his grievances according to the University's grievance procedure.  Plaintiff does not complain that the grievance procedure itself, as promulgated by the University, violates his due process rights.  Plaintiff argued that *Okpalobi* should only be applied in the circumstances similar to those in that case.

The central tenet of *Okpalobi* is that for the *Ex Parte Young* exception to apply the state official must have some connection with the enforcement of the challenged unconstitutional statute.

The Supreme Court's decision in *Young*, appraised in

---

[23] Record document number 48, defendants' reply memorandum, p. 5.

[24] Record document number 52, plaintiff's reply memorandum, p. 5.

the light of its predecessors *Smyth* [*v. Ames*, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819 (1898)] and *Fitts* [*v. McGhee*, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1899)] and its progeny, is thus properly understood to create a precise exception to the general bar against suing states in federal fora.   This exception only applies when the named defendant state officials have some connection with the enforcement of the act and "threaten and are about to commence proceedings" to enforce the unconstitutional act. *Ex Parte Young*, 209 U.S. at 155-56, 28 S.Ct. 441.

...

... Specifically, the question raised before this en banc court is whether the *Young* fiction requires that the defendant state official have some enforcement powers with respect to the particular statute at issue, or whether the official need have no such enforcement powers and only need be charged with the general authority and responsibility to see that all of the laws of the state be faithfully executed.

...

... Thus, any probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute.[25]

The court further noted:

... the necessary fiction of *Young* requires that the defendant state official be acting, threatening to act, or at least have the ability to act.  *Young*, 209 U.S. at 159, 28 S.Ct. 441 (noting that the fiction applies "where an official claims to be acting under the authority of the state."). It is this unconstitutional conduct, or at least the ability to engage in the unconstitutional conduct, that makes him no longer a representative of the sovereign.  Without at least the ability to commit the unconstitutional act by the official defendant, the fiction cannot be sustained.  *See*, *e.g.*, *Fitts*, 172 U.S. at 530, 19 S.Ct. 269; *Children's Healthcare* [*v. Deters*], 92 F.3d [1412] at 1415-16 [(6th Cir.1996)].  Indeed, if

---

[25] *Okpalobi*, 244 F.3d at 416-17.

there is no act, or potential act, of the state official to enjoin, an injunction would be utterly meaningless.[26]

Assuming *Okpalobi* requires the plaintiff to establish that the individual and Board member defendants have a connection to enforcement of University policies and the grievance procedure, the plaintiff's complaint sufficiently alleges such a connection.[27]  The allegations in the plaintiff's original and amending complaints contain specific facts which, if accepted as true, establish that the individual defendants are University personnel who are connected to the application and administration of University policies and/or the grievance procedure.  Plaintiff also alleged that they were directly involved with the enforcement of the University's refusal to process the plaintiff's grievances in accordance with the University's policies and/or the grievance procedure.  Moreover, it can be reasonably inferred from the positions of the individual and Board member defendants that they have the ability and the duty to enforce the University policies and/or the grievance procedure.

---

[26] *Id.* at 421.

[27] This court does not need to definitively resolve at this time whether *Okpalobi* is applicable in this case.  Further development of the facts may reveal that the reasonable inference regarding the authority of the individual and Board member defendants is not factually supported.  Discovery may reveal that some of the individual or Board member defendants have greater or lesser authority than others, or that a particular defendant's authority does not extend to matters involved in a particular grievance or to the enforcement of a particular policy.

**Claims Against the Individual Defendants**

The individual defendants asserted qualified immunity as a defense to the plaintiff's § 1983 claims against them in their individual capacity.  Defendants argued that the plaintiff did not demonstrate how they violated any clearly established statutory or constitutional right under the First or Fourteenth Amendment.

### Retaliation under the First Amendment

Defendants focused on the second element of the plaintiff's First Amendment claim and argued that the plaintiff did not allege sufficient facts to demonstrate that the grievances at issue constitute speech involving a matter of public concern.  Defendants specifically argued that the original and amended complaints show that the plaintiff's speech related to matters involving personal disputes with his employer.[28]  Therefore, defendants contended, the

---

[28] Defendants also referred to their Motion to Compel to show that the plaintiff's activities concern purely personal disputes. Record document number 48, defendants' reply memorandum, p. 7. However, the record does not contain a Motion to Compel, presumably to compel discovery, filed by the defendants. Defendants' did file an opposition to the plaintiff's Motion to Compel Discovery. Record document number 27, plaintiff's motion; record document number 31, defendants' opposition. Defendants attached numerous documents to their opposition, including a blank grievance form, but not any of the plaintiff's actual grievances. Plaintiff filed a reply memorandum which included as an exhibit his answers to interrogatories. Record document number 37, exhibit 1. These discovery responses provided some details about his grievances; they did not include the actual grievances. But even if this summary judgment-type evidence could be considered in connection with this aspect of the defendants' motion to dismiss without converting it to a motion for summary judgment under Rule 56,
(continued...)

plaintiff failed to plead facts which could support a finding that his speech involved an issue of public concern.

In his original complaint filed in 2006 the plaintiff alleged that there "are more than ten (10) pending grievances," all of which "concern disputes as to the terms and conditions of his employment as a tenured university professor."[29]  Plaintiff later amended his complaint to increase the number of grievances to "approximately 30" and removed the original characterization of them.  Consequently, the defendants' argument is not based on an accurate the description of the plaintiff's grievances.

A review of the original and amended complaints shows that the plaintiff has set forth more than conclusory allegations and has alleged sufficient facts to satisfy the second element of his First Amendment retaliation claim.[30]  While some of the allegations indicate that the content, form and context of the plaintiff's communications were part of a personal employment dispute between

_____

[28](...continued)
Fed.R.Civ.P., the record would still be insufficient to find that the subjects of all the grievances were matters involving personal disputes with the plaintiff's employer rather than matters of public concern.

[29] Record document number 1, ¶ 7.

[30] In his opposing memorandum, the plaintiff argued that he is not required to establish that the speech at issue is a matter of public concern to support a First Amendment retaliation claim pursuant to the Petition Clause.  Because the plaintiff has sufficiently alleged that his lawsuit and grievances constitute speech involving a matter of public concern, it is unnecessary to address the parties' arguments regarding the Petition Clause.

the plaintiff and the University, a substantial number of allegations could support a finding that at least some of the plaintiff's speech related to a matter of public concern.[31]   These factual allegations when viewed as whole indicate that the subjects of the plaintiff's grievances were not solely matters of personal interest.   The grievances also concerned matters that, if revealed to the public, would expose wrongdoing, i.e., misappropriation of monies, falsification of documents, and violence in the workplace.[32]   Therefore, it does not appear beyond doubt that the plaintiff can prove no set of facts consistent with his allegations to support his First Amendment retaliation claim.   Plaintiff's allegations implicate issues relevant to the public's evaluation of the performance of a governmental agency.[33]

Defendants also argued that they are entitled to qualified immunity because the plaintiff cannot establish that they did not act in an objectively reasonable manner.   They specifically argued that since the Board prevailed in the state court suit, the

---

[31] Plaintiff's Second Amended Complaint, ¶ 3.

[32] *Kennedy*, 224 F.3d at 369, *citing*, *Thompson v. City of Starkville, Mississippi*, 901 F.2d 456, 463, 467 (5th Cir. 1990)(employee's speech if revealed to public would expose wrongdoing and not just the fact that the employee is upset with the status quo; internal nature of the communications does not vitiate the status of the statement as addressing a matter of public concern).

[33] *Id*. at 700, *citing*, *Davis v. West Community Hosp.*, 755 F.2d 455, 461 (5th Cir. 1985).

defendants were reasonable in relying on the court's findings.

As noted above, the state court's determination of the plaintiff's First Amendment retaliation claims was based on its analysis of the specific grievances alleged in the state court case. In the plaintiff's federal complaint, new grievances and his two lawsuits form the basis for the plaintiff's retaliation claim. Because the state court's determination was limited to the specific set of facts presented to it, the defendants cannot simply rely on that judgment to establish that they acted reasonably, particularly when the factual circumstances are distinguishable. Thus, the defendants have failed to demonstrate that they are entitled to qualified immunity from plaintiff's First Amendment retaliation claim.

### Fourteenth Amendment Claim

Defendants' argued that the plaintiff failed to establish that he had a constitutionally protected property interest in the grievance procedure. As explained above, this claim is barred by res judicata.

### Supplemental State Law Claims

Defendants argued that the plaintiff cannot support an intentional infliction of emotional distress claim or a claim for tortious interference with his contract rights. Plaintiff asserted

that he was not relying on these theories of Louisiana law.[34]  Since there are no such claims, the defendants' arguments are moot.

Defendants argued that the plaintiff's breach of contract claim against the defendants in their official capacity is barred by the Eleventh Amendment.[35]  This argument has merit.  A claim against the defendants in their official capacity is the same as a claim against the entity by who the are employed – the Board.  The Board is immune from suit under the Eleventh Amendment.[36]  *Ex Parte Young* does not assist the plaintiff - a federal court does not have the authority to grant prospective injunctive relief requiring a state official to comply with state law.[37]  Therefore, even assuming the plaintiff has a state law contractual right to use the University grievance procedure, this court cannot grant the plaintiff relief for a breach of his contractual right in the form of an affirmative injunction, i.e. an injunction requiring the defendants in their official capacity to let him use the grievance procedure, or requiring them to follow its provisions when he does.

---

[34] Record document number 39, opposition memorandum, p. 36.

[35] Record document number 26, supporting memorandum, p. 18. Plaintiff did not allege that he has any contract with any defendant.  Therefore, he has not alleged a breach of contract claim against any defendant in the defendant's individual capacity. Neither the University nor the State of Louisiana is a defendant, and the Board is no longer a defendant.

[36] *See*, *Laxey, supra.*

[37] *Pennhurst, supra.*

Consequently, the plaintiff's state law contractual claim is a claim upon which relief cannot be granted.

## Recommendation

It is the recommendation of the magistrate judge that the Motion to Dismiss filed by defendants The Board of Supervisors of the University of Louisiana System, Dr. John Crain, Dr. David Evenson, Dr. Hunter Alessi and Dr. Tammy Bourg be granted in part and denied in part.

Plaintiff's Fourteenth Amendment due process claim based on denial of access to the University's grievance procedure is barred by res judicata and should be dismissed.

Plaintiff's state law contractual claim is a claim upon which relief cannot be granted and should be dismissed.

In all other respects, the defendants' motion should be denied.

Baton Rouge, Louisiana, July 29, 2008.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE