UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DR. STEVEN RUSHING                                     CIVIL ACTION

VERSUS                                                 NO. 06-623

THE BOARD OF SUPERVISORS OF THE                        SECTION "C" (4)
UNIVERSITY OF LOUISIANA SYSTEM
(SOUTHEASTERN LOUISIANA UNIVERSITY),
ET AL

ORDER

IT IS ORDERED that:

1. The following claims were dismissed by the order of Judge Tyson dated September 11, 2008:[1]

   a. Plaintiff's claims against the Board of Supervisors for the University of Louisiana System ("Board") based on Eleventh Amendment immunity.

---

[1] Judge Tyson's order concerned claims made the Original, First Supplemental and Amended and Second Amended Complaints. Rec. Docs. 1, 10, 43. The plaintiff had sued the following defendants in their individual and official capacities: Dr. John Crain ("Crain"), Provost and Vice President for Academic Affairs; Dr. David Evenson ("Evenson"), Chair of the Department of Music; Dr. Hunter Alessi ("Alessi"), Ombudsperson; and Dr. Tammy Bourg ("Bourg"), Dean of School of Arts and Humanities. At the time of the order, Laverne Simoneaux, the President of the Southeastern Louisiana University Faculty Senate had not been named a defendant. Simoneaux was sued in her individual and official capacity in the Third Supplemental and Amended Complaint, filed on June 30, 2009. Rec. Doc. 80.

1

  Rec. Docs. 62, 56 at 7-8;[2]

 b. Plaintiff's § 1983 claims against all defendants sued in their official capacity for: prospective injunctive relief to conform to commands of state law re: state contractual rights based on Eleventh Amendment immunity and *Ex Parte Young*.  Rec. Docs. 62, 56 at 10, 29;

 c. All of plaintiff's § 1983 Fourteenth Amendment due process claims against the defendants in their individual and/or official capacities with re: access to the University grievance procedure based on issue preclusion.[3]  Rec. Docs. 62, 56 at 11, 16-18, 28, 30.

 d. All § 1983 claims against defendants in individual and/or official capacities re: First Amendment retaliation claims concerning from claims

---

[2] The plaintiff deleted and dismissed the Board in his Second Amended Complaint filed on January 23, 2008. Rec. Doc. 43. It appears that the plaintiff is suing the Board members in their official capacities only. Rec. Doc. 43.

[3] This Court disagrees with the plaintiff's characterization of Judge Tyson's order insofar as the plaintiff alleges that his claim for "equitable and injunctive relief regarding his access to the grievance procedure" survived dismissal. Rec. Doc. 112 at 2. The Court also recognizes that the plaintiff previously argued that the previous state suit did not involve a Fourteenth Amendment liberty interest in the contractual grievance rights when he objected to the Report and Recommendation of the Magistrate Judge upon which Judge Tyson's order is based. Rec. Doc. 57. As previously argued by the defendants, the state law litigation referred to due process rights without distinction as to property or liberty rights. Rec. Doc. 58. These objections were considered by Judge Tyson when he dismissed the entire Fourteenth Amendment due process claim based on denial of access to the grievance procedure. Rec. Doc. 62.

or grievances presented to the state court based on issue preclusion. Rec. Docs. 62, 56 at 11, 18;

e. Plaintiff's supplemental state law claims against all defendants in individual and/or official capacities for intentional infliction of emotional distress and/or tortious interference with contract rights. Rec. Docs. 62, 56 at 28-29.[4]

2. The following rulings were also made by order of Judge Tyson:

a. Plaintiff's First Amendment retaliation claims against defendants members sued in their official capacity for prospective injunctive relief to conform to commands of federal law based on *Ex Parte Young* were not barred by issue preclusion if they were not subject of the state court litigation. Rec. Docs. 62, 56 at 10, 18;

b. The plaintiff adequately alleged that the defendants being sued in official capacity for prospective injunctive relief have a sufficient connection with

---

[4]Judge Tyson order dismissed all state law contractual claims against the defendants. Rec. Docs. 62, 56 at 30. He also found that the state court did not address the existence of plaintiff's contractual right to grievance procedure under state law by virtue of employment contract between plaintiff and university for issue preclusion purposes, but that Eleventh Amendment immunity applied. Rec. Docs. 62, 56 at 20, 29.

enforcement of the allegedly unconstitutional acts.[5] Rec. Docs. 62, 56 at 24;

c. The defendants sued in their individual capacities were not entitled to qualified immunity based on the argument that the Board prevailed in state court in first suit with re: for grievances not otherwise barred by issue preclusion. Rec. Docs. 62, 56 at 27-28.[6]3.

3. The defendants' motion to dismiss and/or for summary judgment is now before the Court.[7] Rec. Doc. 100. The defendants' motion for summary judgment presents several arguments for dismissal that are not addressed by the plaintiff in his opposition. Rec. Docs. 100, 112. Given the lengthy pendency of this case and the ample provision of time for amendment to pleadings, preparation and briefing, the plaintiff's failure to oppose summary judgment as to the dismissal of any claim indicates agreement that the

---

[5]Again, the Court disagrees with the plaintiff's characterization that Judge Tyson ruled that the defendants have the ability to enforce the grievance procedure in this suit. Rec. Doc. 112 at 4. His order concerned the sufficiency of the pleadings for purposes of Fed. R. Civ. P. 12(b)(6), not summary judgment.

[6]The Court disagrees with the plaintiff's characterization that the defendants are rearguing their entitlement to qualified immunity based on the outcome of the state court proceeding. Rec. Doc. 112 at 5.

[7]By virtue of its timing, it also appears that the motion pertains only to those claims raised in the plaintiff's Original, First Supplemental and Amended, Second Amended and Third Supplemental and Amended Complaints. Rec. Docs. 1, 10, 43, 80. The opposition, however, was filed after the Fourth Amended Complaint was filed. Rec. Doc. 104, 112.

claim should be dismissed. The motion for summary judgment is GRANTED as follows:

- a. Plaintiff's claims against the defendants in their official capacities for monetary damages and state law claims for money damages are DISMISSED under the Eleventh Amendment. Rec. Doc. 100-1 at 5, 7. The plaintiff did not oppose the motion as to the dismissal of these claims;

- b. Plaintiff's Title VII claims contained in the Original Complaint are DISMISSED. Rec. Doc. 101-1 at 7. The plaintiff does not oppose the motion as to the dismissal of these claims;

- c. Plaintiff's First Amendment/ freedom of religion claims against the defendants are DISMISSED. Rec. Doc. 100-1 at 8-9. The plaintiff does not oppose the motion as to the dismissal of these claims. The Court finds that the plaintiff fails to show that Dr. Evenson's action in giving plaintiff community service credit rather than professional activity credit for paid performances at churches or temples to which the plaintiff did not belong violated the plaintiff's freedom of religion or otherwise prevented the plaintiff from participating in his religion. In addition, the Court finds that Dr. Evenson's actions were objectively reasonable for purposes of qualified immunity, to the extent the plaintiff sues Evenson in his

individual capacity.[8] Rec. Doc. 100-1 at 9. Again, the plaintiff does not oppose dismissal based on qualified immunity;

d. Plaintiff's First Amendment/freedom of speech claims against the defendants are DISMISSED.[9] Specifically, the defendants argue that the grievance concerning the Board's August 25, 2005, action concerned old grievances filed before or during the state law suit. Rec. Doc. 100-1 at 10-14. They also argue that there is no First Amendment protection for the plaintiff's freedom of speech claims alleging Crain, Bourg and Evenson limited the plaintiff's speech when they met with the plaintiff to discuss his grievances. Rec. Doc. 100-1 at 10-14. The plaintiff does not oppose the dismissal of these claims. The plaintiff fails to show that this speech was protected or that it was motivated by matters of public concern; rather the

---

[8] The plaintiff bears the burden of demonstrating the inapplicability of the defense of qualified immunity. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

[9] The Court disagrees with the plaintiff's characterization that Judge Tyson ruled that the plaintiff had alleged complaints involving matters of public concern. Rec. Doc. 112 at 7. Instead, the order noted the plaintiff's own listing of issues of alleged public concern in conjunction with the issue of *res judicata* and the sufficiency of the pleadings, and finding that "the record fails to demonstrate that the issues raised in his grievances addressed and judicially determined by the state court present the same issues as to those grievances referenced in his federal complaint." Rec. Doc. 62, 56 at 19. In this regard, it should be noted that the plaintiff first alleged issues of public concern in this matter in his Second Amended Complaint, filed in January 2008, shortly after he filed his opposition to the first motion to dismiss with Judge Tyson. Rec. Docs. 39, 43.

speech was related to a matter of private concern. Rec. Doc. 100-1 at 12-14. In addition, the Court finds that the defendants Crain, Bourg and Evenson are entitled to qualified immunity, to the extent the plaintiff sues them in their individual capacities. The plaintiff does not oppose the dismissal of these claims based on qualified immunity.

e. Plaintiff's first nine grievances presented in the state court petitions preclude the plaintiff from litigating any issue relevant to those claims, whether or not raised in the state court proceedings based on claim preclusion. Rec. Doc. 100-1 at 22. The plaintiff does not oppose the motion as to the dismissal of these claims;

f. Plaintiff's § 1983 claims <u>relating</u> to conduct that occurred more than one year prior to August 28, 2006, are DISMISSED as prescribed. Rec. Doc. 100-1 at 24. This dismissal would include all of the claims itemized by the defendants in their memorandum. Rec. Doc. 100-1 at 24-26. The plaintiff does not oppose the motion as to the dismissal of these claims;

g. Plaintiff's claims against defendants Alessi and Simoneaux in their official capacities are DISMISSED because no prospective injunctive relief is available. Rec. Doc. 100-1 at 27. The plaintiff does not oppose the motion as to the dismissal of these claims;

h. Plaintiff's claims against defendants Board members Hale, Ricard, Woods, Bussie, Smith and Rougeou in their official capacities are DISMISSED because no prospective injunctive relief is available. Rec. Doc. 100-1 at 27-28. The plaintiff does not oppose the motion as to the dismissal of these claims;

i. Plaintiff's claims against the defendants in their individual capacities for monetary lost wage and medical expense damages are DISMISSED. Rec. Doc.100-1 at 28. The plaintiff previously represented that he seeks no lost wages or medical expenses in conjunction with his refusal to respond to discovery concerning income and medical history, and provides no good cause to retract this representation and further delay this already extended litigation. The plaintiff does not oppose the motion as to the dismissal of these claims;

j. Plaintiff's claims for compensatory or punitive damages against all defendants in their official capacities are DISMISSED. Rec. Doc. 100-1 at 30. The plaintiff does not oppose the motions as to the dismissal of these claims.

The defendants also seek summary judgment as to two remaining § 1983 claims: the plaintiff's First Amendment retaliation claim and substantive due process claim

pertaining to his employment duties and leave. Rec. Doc. 100-1 at 14-21. The plaintiff's opposition focuses only on these two § 1983 claims.[10] He claims the First Amendment retaliation claim concerns the alleged "freezing plaintiff's grievance rights in retaliation" for his prior state lawsuit, internal complaints regarding issues of public concern and this lawsuit, and challenges the defenses of qualified immunity and "final decision maker" related to this claim. Rec. Doc. 112 at 2, 5-15. The second concerns his alleged due process property right to adequate leave for professional activities.[11] Rec. Doc. 112 at 16-17.

The defendants' motion for summary judgment is GRANTED as follows:[12]

k. Plaintiff's First Amendment Retaliation claims against the defendants are DISMISSED. The defendants challenge six specific instances of alleged retaliation involving personnel matters. Rec. Doc. 100-1 at 14. Although the plaintiff does oppose the dismissal of First Amendment retaliation

---

[10]Again, additional claims were made in the Fourth Amended Complaint, filed subsequent to this motion for summary judgment but prior to the filing of the opposition. Rec. Doc. 104, 112.

[11]It appears that this claim was not considered as one of the two § 1983 causes of action alleged by the plaintiff when Judge Tyson issued his order, although it was alleged as February 2007, when the First Supplemental and Amended Complaint was filed. Rec. Docs. 10, 56 at 11, 62, 112 at 15.

[12]The Court recognizes that some claims may be subject to dismissal on more than one ground by virtue of the manner in which the issues have been presented by the parties.

claims in his opposition, he does not directly address the specific claims for retaliation identified in the motion for summary judgment. In order to prove a § 1983 claim for First Amendment retaliation, the plaintiff must show: (1) that he suffered an adverse employment action; (2) that he spoke as a citizen on a matter of public concern; (3) that his interest in the speech outweighed the government's interest in the efficient provision of public service; and (4) that the speech precipitated the adverse employment. *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007). The plaintiff remains employed and tenured. Assuming without finding that the plaintiff suffered an adverse employment action, he has not presented proof as to the other necessary elements.

In general, the First Amendment does not protect the plaintiff's speech if it was made in his employment capacity rather than as a private citizen, an analysis that focuses on the role of the speaker rather than the content of the speech. *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006). Certain factors were identified by the *Garcetti* Court as relevant to this determination: the location where the speech is made, a comparison of the subject matter of the speech and the employment and whether the speech is made pursuant to the plaintiff's job duties. *Id.* at 421. The Fifth Circuit

in *Williams v. Dallas Independent School District*, 480 F.3d 689, 693 (5th Cir. 2007), the Fifth Circuit clarified that a public employee is not protected by the First Amendment if the speech is not necessarily required by his job duties but is nonetheless related to job duties or the speech is made in the course of performing job duties. The Fifth Circuit in *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008), recognized that if the employee shared his speech to persons outside the workplace, it would be more likely to enjoy First Amendment protection, and that a single communication can raise both official and private concerns.

At the same time, the *Garcetti* Court did reserve determining whether the same analysis applies in the same manner to academia. "There is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence." *Id.* at 425; *Van Heerden v. Board of Supervisors of Louisiana State University*, 2011 WL 5008410 (M.D.La). This concern was expressed by Justice Souter in dissent, who acknowledged an "extreme" example: "a statement by a government employee complaining about nothing beyond treatment under personnel rules raises no greater claim to constitutional

protection against retaliatory response than the remarks of a private employee." *Garcetti,* 547 U.S. at 427. Justice Souter argued for First Amendment protection to teachers in public colleges and universities, who "necessarily speak and write" pursuant to their official duties because the First Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom" and "a governmental enquiry into the contents of a scholar's lectures at a state university" could wrongfully invades the areas of "academic freedom and political expression." *Id.*, quoting *Shelton v. Tucker*, 364 U.S. 479, 487 (1960) and *Sweezy v. New Hampshire*, 354 U.S. 235. 250 (1957). The Court finds that, regardless of the plaintiff's characterization to the contrary, the six challenged claims being made by the plaintiff here fall into the extreme example of personnel decisions for which no First Amendment protection is recognized and fall far from the mark required for protected academic speech.[13]

"We have neither the competency nor the resources to undertake to micromanage the administration of thousands of state educational

---

[13]The Court also finds that the plaintiff's interest in commenting on the subject matters, even if they contain an element of public concern, does not outweigh his employer's interest in promoting efficiency and that the plaintiff's speech motivated the adverse employment decision for purposes of the third and fourth elements required for a First Amendment retaliation claim.

institutions." *Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121,124 (5th Cir. 1991). "Of all the fields that the federal courts "'should hesitate to invade and take over, education and faculty appointments at [the university] level are probably the lease suited for federal court supervision.'" *Id.* (internal citations omitted).

In addition, the Court finds that the defendants are entitled to qualified immunity as to the challenged First Amendment retaliation claims.[14] The individual defendants did not knowingly violate a recognized constitutional right clearly established at the time of the alleged violations.[15]

l.  Plaintiff's substantive due process claims are DISMISSED. The defendants challenge the plaintiff's due process claims relative to the alleged change of his tenure position as described in his initial offer of employment pertaining to the leave policy and outside employment. Rec. Doc. 100-1 at 19-20. The plaintiff argues that he has a property interest in three weeks

---

[14]The Court does not address the "final decision maker" defense argument, but would welcome further briefing on it and the apparent lack of exhaustion of administrative remedies in any future motion.

[15]The Court disagrees with the plaintiff's argument that "Defendants would have this Court strip plaintiff of First Amendment protection for every single statement or complaint made as a public school professor." Rec. Doc. 112 at 10.

13

of leave to pursue outside employment because his professional activity responsibilities are "contingent upon being able to perform outside of the university." Rec. Doc. 112 at 15. That policy was changed to ten classroom days per semester.

In order to establish a substantive due process claim, the plaintiff must present proof that: (1) that he had a property interest/right in his leave, and (2) that the public employer's termination of that interest was arbitrary or capricious or not reasonably related to a legitimate government concern. *Harrington v. Harris*, 118 F.3d 359, 368 (5th Cir. 1997); *Williams v. Texas Tech University Health Sciences Center*, 6 F.3d 290, 294 (5th Cir. 1993). "Judicial evaluation of academic decisions requires deference and they are overturned only if they are 'such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" *Williams*, 6 F.3d at 294, quoting *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). Here, even assuming without finding that the plaintiff had the requisite property interest in three weeks of leave, he has presented no proof that the defendant's determination was arbitrary or capricious. Instead it is undisputed that the policy was adopted after

study of the leave policies of other public university music departments, and was applied to all faculty members.   Rec. Doc. 100-1 at 19-21; Rec. Doc. 112 at 15-16.

In addition, the Court finds that the defendants being sued in their individual capacities are entitled to qualified immunity as to these claims. The plaintiff does not oppose the dismissal of these claims based on qualified immunity.

4. In the event another motion for summary judgment is filed by either party with regard to pending claims set forth in the Fourth Amended Complaint or elsewhere, the motion shall be filed within 30 days from the date of this order.

5. No motion for reconsideration shall be filed until 31 days from the date of this order.   In the event that another motion for summary judgment is filed, no motion for reconsideration shall be filed until a ruling on that motion for summary judgment has been issued.

6. Any future motion for summary judgment and/or motion for reconsideration shall be accompanied with a separate summary of each specific claim being under consideration that includes: the pleadings in which the claim is made, the defendants against whom the claim is made, the capacity in which the

defendants are being sued as to the claim, all dates relevant to the underlying claim along with proof of all relevant facts. Defenses shall be presented in the same manner. In addition, record reference to any previous order concerning an issue affecting the motion as to a specific claim must be provided.

7. No further amendments to the complaint will be allowed in this matter. If the plaintiff has additional claims, he can file them in a separate suit filed in a court of proper original jurisdiction and venue;[16]

8. Counsel shall confer and arrange for a settlement conference with Magistrate Judge Roby within two weeks from this order.

New Orleans, Louisiana, this 5th day of December, 2011.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[16]In so ordering, the Court notes that the plaintiff "cannot combine separate, discrete instances of First Amendment retaliation into a continuing violation for purposes of his § 1983 claim." *Van Heerden*, 2011 WL 5008410 at *8.